JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-415 JGB (SHKx)** | Date | May 4, 2023 |
|---|---|---|---|
| Title | *Mark A. Baird, et al. v. PulteGroup, Inc. et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiffs' Motion to Remand (Dkt. No. 19); (2) VACATING the May 8, 2023 Hearing; and (3) VACATING the July 17, 2023 Scheduling Conference (IN CHAMBERS)

Before the Court is a motion to remand filed by Plaintiffs Mark A. Baird and Bradley T. Baird ("Plaintiffs"). ("Motion," Dkt. No. 19.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **VACATES** the May 8, 2023 hearing.

## I.   BACKGROUND

On March 14, 2022, Plaintiffs filed a complaint against Defendants PulteGroup, Inc., Pulte Home Company, LLC, Pulte Mortgage LLC, and Del Webb Communities, Inc. (collectively, "Pulte" or "Pulte Entities"), Brett Picano ("Mr. Picano") and Does -100 in the Superior Court of the State of California, County of Riverside. ("Notice of Removal," Dkt. No. 1, Ex. A, "Complaint"). The Complaint asserts a single cause of action against all Defendants: Discrimination Based on Veteran Status pursuant to California's Fair Employment and Housing Act (FEHA), Cal. Gov. Code § 12955. (See id.)

On June 6, 2022, Pulte filed an answer in state court. (Notice of Removal Ex. B.) On July 14, 2022, Mr. Picano filed an answer in state court. (Id. Ex. C.) On February 17, 2023, Defendants took the first portions of Plaintiffs' depositions. (Id. ¶ 5; Ex. D.)

On March 9, 2023, Defendants removed the action on the basis of diversity jurisdiction, asserting that Mr. Picano is a fraudulently joined or "sham" defendant.  (See id. ¶ 11.)  Defendants asserted that removal was timely pursuant to 28 U.S.C. § 1446(b)(3) because Pulte had notice that the action was removable only upon taking Plaintiffs' depositions on February 17, 2023.  (See id. ¶ 9.)  Among other exhibits, Defendants attached excerpts of the deposition transcripts of Mark A. Baird and Bradley Baird to the Notice of Removal.  (See id. Ex. D, "Mark Baird Dep.," "Bradley Baird Dep.," Dkt. No. 1-4.)

On April 3, 2023, Plaintiffs filed the Motion.  (Motion.)  In support of the Motion, Plaintiffs filed a declaration of Arthur Kim, along with various exhibits.  ("Kim Declaration," Dkt. No. 19-2.)  On April 17, 2023, Defendants filed an opposition.  ("Opposition," Dkt. No. 21.)  In support of the Opposition, Defendants filed a declaration of Andrea Fellion ("Fellion Declaration," Dkt. No. 21-2 and excerpts of the deposition transcript of Mark A. Baird.  ("Mark Baird Dep.," Fellion Declaration Ex. 1.)  On April 24, 2023, Plaintiffs replied.  ("Reply," Dkt. No. 23.)  In support of the Reply, Plaintiffs filed a declaration of Mark A. Baird.  ("Mark Baird Declaration," Dkt. No. 23-1.)

On April 17, 2023, the Court set a scheduling conference for July 17, 2023.  (Dkt. No. 22.)

## II.   FACTUAL ALLEGATIONS

Plaintiffs Mark A. Baird and Bradley T. Baird are residents of Riverside, CA.  (Complaint ¶¶ 1-2.)  Mr. Picano is a resident of California.  (Id. ¶ 8.)  Mark A. Baird is a veteran, honorably discharged; Bradley T. Baird is his husband.  (Id. ¶ 14.)  From May 2021 to October 2021, the Pulte Entities discriminated against Plaintiffs based on Plaintiffs' veteran status or association with veteran status.  (Id. ¶ 15.)

On or about May 4, 2021, Plaintiffs visited the property located at 122 Claret, Rancho Mirage, CA 92270 ("the Property") to view model homes.  (Id. ¶ 16.)  Plaintiffs were met by Mr. Picano, "an employee or agent of one or more" Pulte Entities.  (Id.)  Mr. Picano "explicitly told Plaintiffs that they would not get a home at the property if they tried purchasing the home using a VA loan."  (Id.)  A VA loan is a mortgage loan guaranteed by the United States Department of Veterans Affairs ("VA") for the benefits of veterans.  (Id.)

Mr. Picano told Plaintiffs that if they used a VA loan, the optional interior and exterior home upgrades would be significantly limited ("options cap") compared to buyers using a conventional loan.  (Id.)  Mr. Picano's "statements reflected the policy and practice of the Pulte Entities (one or more or all of them)".  (Id.)  "The stated policy constituted discrimination based on veteran status."  (Id.)  As a result of the discriminatory policy, Plaintiffs were turned away from buying a home at the property and suffered damages.  (Id.)

In May 2021, Plaintiffs contacted the California Department of Fair Employment and Housing ("DFEH") and learned that housing discrimination based on veteran status was illegal.  (Id. ¶ 17.)

In August 2021, Plaintiffs returned to the property and tried to purchase a home again. (Id. ¶ 18.) Plaintiffs submitted an application for a VA loan to Pulte Mortgage for the purpose of purchasing a home at the property. (Id.) Pulte Mortgage conducted a credit inquiry, but never contacted Plaintiffs regarding their application or informed Plaintiffs whether their application was approved or denied. (Id.) Pulte Mortgage did not provide the requested financial assistance to Plaintiffs, which, upon information and belief, was because of a policy of a discriminating against VA loans. (Id.)

Around the end of August 2021, Plaintiffs were pre-approved for a VA loan from a different lender. (Id. ¶ 19.) Plaintiffs returned to the Property and tried again to purchase a home. (Id.) On or about September 3, 2021, Plaintiffs signed a home purchase agreement with Pulte Home and paid the deposit for their lot. (Id. ¶ 20.) But on September 9, 2021, Mr. Picano "informed Plaintiffs that they were subject to a 10% cap on options purchases (options purchases limited to 10% of the base price of the home) because they were using a VA loan." (Id.) The same day, Mr. Picano canceled the purchase agreement because Plaintiffs complained about the discriminatory options cap and because Plaintiffs informed Mr. Picano that they had complained to the DFEH about discrimination. (Id.)

After the cancellation, Plaintiffs made numerous attempts to speak with a representative from Pulte. (Id.) Later that month, Jordan Tasch, an employee or agent of one or more Pulte Entities, contacted Plaintiffs by phone and told them that Pulte would not sell them a home because veterans always cancel their contracts and leave Pulte stuck with the home. (Id.) Pulte discriminated against Plaintiffs on the basis of veteran status or association with veteran status by imposing a discriminatory cap on options purchases and canceling the purchase agreement and denying Plaintiffs the opportunity to buy a home. (Id.)

After Plaintiffs retained an attorney to combat the housing discrimination, Pulte offered to sell Plaintiffs a home without the discriminatory cap on options purchases. (Id. ¶ 21.) However, Plaintiffs were unable to complete the purchase because Mark A. Baird suffered a mental and emotional breakdown on October 5, 2021 as a result of the hostility and discrimination Plaintiffs faced from Pulte between May 2021 and October 2021. (Id.)

### III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal district courts have original jurisdiction over civil actions in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading. 28 U.S.C. § 1446(b). 28 U.S.C. Sections 1446(b)(1) and

(b)(3) provide that, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant," of the initial pleading or "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." The Ninth Circuit has described this statute as providing "two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper from which it may be ascertained that the case is one which is or has become removable." Harris v. Bankers Life and Casualty Co., 425 F.3d 689, 692 (9th Cir. 2005).

Removal statutes are to be strictly construed, Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety, Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996). See Abrego v. Dow Chem. Co., 443 F.3d 676, 683-85 (9th Cir. 2006); see also Calif. ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute[.]"). "[A]ny doubt about the right of removal requires resolution in favor of remand." Moore–Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus, 980 F.2d at 566).

Removal is proper despite the presence of a non-diverse defendant where that defendant is a fraudulently joined or "sham" defendant. Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" GranCare, LLC v. Thrower, 889 F.3d 543, 548 (9th Cir. 2018) (quoting Hunter v. Phillip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009)).

The Ninth Circuit has emphasized that "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." Grancare, 889 F.3d at 549. Rather than merely showing that the plaintiff has not alleged facts plausibly stating a claim for relief, a defendant must show that there is no "*possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants[.]" Id. at 548 (internal quotation marks and citations omitted); see also Briano v. Conseco Life Ins. Co., 126 F. Supp. 2d 1293, 1296 (C.D. Cal. 2000) (defendant is disregarded as a "sham" defendant when "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court"); Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand."). Thus, that a court would grant a motion to dismiss the claim is insufficient to establish fraudulent joinder. Grancare, 889 F.3d at 550. "[T]he district court must [still] consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." Id. Defendants asserting fraudulent joinder bear a "heavy burden" because of the presumption against finding defendants were fraudulently joined. Id. at 548.[1]

---

[1] Defendants appear to claim there is no presumption against removal when the removing party asserts fraudulent joinder. (See Opposition at 2 n.2.) That is wrong.

When assessing whether a plaintiff states a claim against a non-diverse defendant, the failure to state a claim must be "obvious according to the well-settled rules of the state[.]" United Computer Sys., Inc. v. AT & T Corp., 298 F.3d 756, 761 (9th Cir. 2002). "In the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." Nasrawi v. Buck Consultants, LLC, 776 F. Supp. 2d 1166, 1169–70 (E.D. Cal. 2011) (citing Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1426 (9th Cir. 1989)). "In order to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant." Knutson v. Allis-Chalmers Corp., 358 F. Supp. 2d 983, 993 (D. Nev. 2005).

"A court may look beyond the pleadings to determine if a defendant is fraudulently joined," Nasrawi, 776 F. Supp. 2d at 1170, including by considering "summary judgment-type evidence" such as declarations and deposition testimony. See Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1068 (9th Cir. 2001). "Fraudulent joinder must be proven by clear and convincing evidence." Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007). Generally, courts may look to extrinsic evidence of fraudulent joinder for the "presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant"; where a court finds itself unable to decide the defendant is fraudulently joined "in a summary manner," that "itself points to an inability of the removing party to carry its burden." Hunter, 582 F.3d at 1044 (citation omitted). In other words, "[t]o support a claim that a nondiverse defendant has been fraudulently joined, the removing party must show that the plaintiff has failed to state a valid cause of action against that nondiverse defendant, and the 'settled rules of the state' must make the failure evident by clear and convincing evidence." Tipton v. Airport Terminal Servs., Inc., 2019 WL 185687, at *5 (C.D. Cal. Jan. 14, 2019) (citation omitted).

## IV.   DISCUSSION

Plaintiffs raise three interrelated arguments in the Motion: (1) Mr. Picano is not a sham defendant; (2) Defendants' removal was untimely, because assuming that Mr. Picano is a sham defendant, that contention would have been evident from the face of the Complaint; and (3) Defendants waived the right to remove by engaging in significant offensive and defensive action in state court for approximately a year. (See Motion.) For the reasons stated below, the Court finds that Defendants have not met their burden to establish that Mr. Picano is a sham defendant and does not reach Plaintiffs' additional arguments for remand, although they may be meritorious as well.

Defendants assert that Mr. Picano is a sham defendant because "individuals cannot be personally liable for communicating or enforcing their employer's allegedly discriminatory policies," and that Mr. Picano's acts were "purely ministerial." (Opposition at 3, 5.) That is because "the principle of vicarious liability flows 'upward,' not 'downward,' so an agent is not liable simply because his principal violates" fair housing statutes. (Notice of Removal ¶ 28)

(citations omitted). While Defendants acknowledge an employee "may be liable for his own discriminatory acts, the employee cannot be liable when he was merely a conduit between the plaintiff and the ultimate decisionmaker." (Id. ¶ 29.) Essentially, Defendants argue that, according to Plaintiffs' own theory of liability, the allegedly discriminatory "options cap" was a Pulte policy, not a policy of Mr. Picano's, and that Mr. Picano cannot be held liable merely for enforcing or communicating his employer's policy. (See id. ¶ 31.)

The Court is not persuaded that Defendants' cited authorities, virtually all out-of-circuit cases construing the federal Fair Housing Act (FHA), not the FEHA, are sufficient to meet to their burden of demonstrating that Plaintiffs' failure to state a claim against Mr. Picano is "obvious according to the well-settled rules of the state[.]" United Computer Sys., 298 F.3d at 761. That is true even if the Court assumes that standards of liability under the FHA and FEHA are identical. See Walker v. City of Lakewood, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001) (reasoning that claims under the Fair Housing Amendments Act (FHAA) and FEHA are analyzed under the same standards); Burgess v. Alameda Hous. Auth., 98 F. App'x 603, 607 (9th Cir. 2004).

FEHA makes it unlawful "[f]or any *person* or other organization or entity whose business involves real estate-related transactions to discriminate against any person in making available a transaction, or in the terms and conditions of a transaction, because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, source of income, familial status, disability, veteran or military status, or genetic information." Cal. Gov. Code § 12955(i)(1) (emphasis added). It also makes it unlawful "for any person to aid, abet, incite, compel, or coerce" any of the "acts or practices declared unlawful" in Section 12955. Id. § 12955(g).

The first case cited by Defendants, Hunter v. Chatman, 2018 WL 10076846 (C.D. Cal. Nov. 20, 2018), does not appear to help them. That case's discussion involved whether "owners, officers, and directors" could be liable under the FHA and FEHA, not an employee like Mr. Picano, and held that the plaintiff *could* state claims against those individual defendants. See id. at *4-5. The next case, Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc., 141 F. Supp. 3d 1321 (S.D. Fla. 2015), also does not support Defendants' argument, at least if one reads the portion directly above the part they cite:

> "An action brought for compensation by a victim of housing discrimination [under the Fair Housing Act] is, in effect, a tort action." Meyer v. Holley, 537 U.S. 280, 285 2003). Thus, traditional common law principles of vicarious liability apply to such claims. Id. at 290–91. Under the common law, "an agent has no obligation to carry out his principal's order to do an illegal act." Restatement (Second) of Agency s 411 (1958). Indeed, except in certain circumstances not relevant to this case, "(a)n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal". Id. s 343. Furthermore, an agent who assists his

> principal in committing a tort is himself liable as a joint tortfeasor. Id. Dillon v. AFBIC Dev. Corp., 597 F.2d 556, 562 (5th Cir. 1979).
>
> However, "the principle of vicarious liability flows 'upward,' not 'downward.' Thus, an agent is not liable simply because his principal violates the Fair Housing Act." Housing Discrimination Law and Litigation § 12B:2; . . . Accordingly, "agents such as property managers can be held liable when they have 'personally committed or contributed to a Fair Housing Act violation.'" Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer, 6 F. Supp. 3d 1272, 1293 (S.D. Fla. 2014).

Id. at 1325-26 (internal citations and brackets omitted). That case thus appears to stand for the proposition that an agent *can* be liable for carrying out the principal's order to commit an unlawful act, for he has no obligation to carry it out. See id.

Kooman for Est. of Romig v. Boulder Bluff Condominiums, Units 73-123, 125-146, Inc., 2020 WL 616352 (W.D. Mich. Feb. 10, 2020), aff'd sub nom. Kooman v. Boulder Bluff Condominiums, 833 F. App'x 623 (6th Cir. 2020), which Defendants cite in support of their theory that Mr. Picano is a mere "conduit," is clearly distinguishable. The court reasoned,

> While an agent might be liable for its own act constituting a tort even if acting at the command of the principal, there is no affirmative tort by Ms. Biegalle or Gerow Management on this record. Rather, the complained of conduct demonstrates that Ms. Biegalle, and by extension, Gerow Management, performed merely as a conduit; Ms. Biegalle passed information from Ms. Kooman, to the Board of Directors, and then relayed questions, and ultimately the decision, from the Board of Directors to Ms. Kooman. The agent's entire focus, then, was on conveying the Board of Directors' decision to Ms. Kooman. Moreover, to the extent Ms. Biegalle did anything beyond acting as a conduit, it was to make a comment favorable to the Plaintiffs' position. Urging caution and providing an opinion favorable to the position of the individual alleging discrimination is not a tort and it does not amount to discrimination under the FHAA.

Id. at *7. Unlike in Kooman, Mr. Picano is not alleged to have simply conveyed a decision made by a board of directors to the plaintiff complaining of discrimination; Mr. Picano was the primary employee with whom Plaintiffs dealt during the negotiations. And rather than make a comment "favorable to the Plaintiff's position," id., Plaintiffs allege that Mr. Picano retaliated against them for complaining to the DFEH about discrimination (see SAC ¶ 20), and according to Mark Baird's deposition testimony, Mr. Picano "got pissed off. He got so angry on the telephone and

was using the F-word and throwing a tantrum like a little baby" when he did so.  (Mark Baird Dep. 128:7-9.)

The only other California authority cited by Defendants is Tuggles v. City of Antioch, 2009 WL 10668169 (N.D. Cal. Oct. 2, 2009), aff'd, 472 F. App'x 786 (9th Cir. 2012).  In Tuggles, the plaintiff brought suit against various defendants, including the Antioch Police Department and some of its officers, for the acts of the Police Department's "Community Action Team" ("CAT"), which was purportedly created "in response to the perception that much of the City of Antioch's problems could be attributed to the Section 8 population." Id. at *2.  The plaintiff's property manager investigated the plaintiff and her family for possible noncompliance with their lease (regarding people living at the home who were not on the contract) and referred the matter to the police, which conducted a welfare fraud investigation. Id. at *3-4.  Asserting racial bias, the plaintiff brought multiple claims under Section 1983 for violations of equal protection and due process, but also sued the City of Antioch, Antioch Police Department and individual police officers for violations of the FHA.  See id. at *3-17.  The court found that the various police defendants were not the proper defendants for the FHA claim because "Plaintiff provides no evidence, nor does she allege, that the individual Defendants in this case were in any position of authority to grant or remove her housing[.]" Id. at *18.  Because "Plaintiff has produced no evidence that Defendants provided housing or housing-related services, nor has she provided evidence that Defendants had the authority to make housing unavailable to her or anyone else," the court granted summary judgment for the police defendants. Id.  The reasoning of Tuggles thus has virtually nothing to do with this case, for Plaintiffs sue an entity that indisputably has the authority to make housing available (or unavailable) and its employee, not a police department, which obviously has no such authority.

Moreover, Tuggles was written by Judge Spero, who also authored Hintz v. Chase, 2017 WL 3421979 (N.D. Cal. Aug. 9, 2017).  Hintz appears to directly undermine Defendants' argument, as it held that, "[u]nder well-established principles of agency law, 'an agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal.'  Therefore, an agent who acts on the instructions of the princip[al] may be held liable as a joint tortfeasor." Id. at *3.  In Hintz, the court found that the allegations against a real estate agent who simply forwarded an email from the owner stating that he did not want to rent to the plaintiff because of her service dog were sufficient to state a claim, even though the agent "may have been acting on the instructions of the owners[.]" Id.  Mr. Picano's involvement in the allegedly unlawful conduct in this case is at least as great as the agent in Hintz, and almost certainly far greater.

Defendants have not cited a single California state court decision assessing individual liability under Cal. Gov Code § 12955, under which Plaintiffs bring suit, let alone one that is directly on point.  The Court's own research has not revealed a single state or federal court decision construing the statute that discusses, let alone embraces, Defendants' arguments that an individual is not liable for "ministerial acts" or when he is a mere "conduit" for the principal's purportedly discriminatory policy or conduct.  Because the law on this question appears to be ambiguous or unsettled, the Court must resolve any ambiguities in Plaintiffs' favor and conclude

that it is possible that a state court could find that Plaintiffs are able to state a claim against Mr. Picano even if the policy he was implementing was his employer's. See Nasrawi, 776 F. Supp. 2d at 1169-70.

Setting aside the legal question discussed above, the Court is also not convinced by the factual basis for Defendants' argument. One of Defendants' primary contentions is that Mr. Picano lacked the authority to cancel a sales contract on his own. (Opposition at 6.) But the sole evidence Defendants have submitted on this point is what *Plaintiffs* testified to their depositions. Defendants claim, "Plaintiff Mark Baird testified that, as a salesperson, Picano was not authorized to cancel their sales contract on his own, and indeed he was not." (Id.) It is true that Mark Baird testified at his deposition that Mr. Picano "is not allowed to cancel a contract. Period. It's against the law for him. Or against his - - what he does for a living. You are not allowed to cancel a contract if you are a salesperson. Period. And he did it." (Mark Baird Dep. 127:22-128:1.) But the Court can hardly credit this testimony at face value. If Mark Baird was asserting a legal conclusion, namely that salespersons generally are not allowed to cancel housing contracts by law, that would be improper; he is a lay witness, not a lawyer. Moreover, Defendants have not cited any legal authority in support of this proposition. And if Mark Baird was making a factual assertion, namely that Mr. Picano did not have the authority from Pulte to cancel a contract on his own, there is nothing in the record that would establish any foundation or personal knowledge for that view, nor can the Court discern how he could have known the contours of Mr. Picano's authority as an employee. Defendants appear to claim that Mark Baird was right, by asserting in the Opposition that "he was not" authorized to cancel a contract on his own. (Opposition at 6.) But they have submitted no *evidence* of this point, for they have not provided a single declaration or deposition excerpt from anyone who works for *Defendants*, which would be the only viable source of evidence pertaining to the nature of Mr. Picano's authority as an employee of Pulte. (See Notice of Removal; Opposition.) If Defendants were to carry their burden of proving fraudulent joinder, they had to convince the Court that the undisputed facts precluded recovery against Mr. Picano on the basis of clear and convincing evidence. See Hamilton Materials, 494 F.3d at 1206; Hunter, 582 F.3d at 1044; Tipton, 2019 WL 185687, at *5. Since they have submitted virtually no relevant evidence regarding the scope of Mr. Picano's duties and the authority under which he acted, they have failed to meet that burden.

For these reasons, the Court cannot conclude that there is no possibility that a state court would find that Plaintiffs can state a claim against Mr. Picano. See Grancare, 889 F.3d at 548-49. Accordingly, the Court lacks subject matter jurisdiction over this action and GRANTS the Motion.

### V.   CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **REMANDS** this action to the Riverside County Superior Court. The May 8, 2023 hearing is **VACATED.** The Scheduling Conference set for July 17, 2023 is **VACATED.** The Clerk is directed to close the case.

**IT IS SO ORDERED.**